HELEN MATELIS, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 81—3163

Opinion filed February 8, 1983.—Rehearing denied March 11, 1983.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Frank W. Nagorka, Assistant Corporation Counsel, of counsel), for appellants.

Terrence E. Leonard, of Chicago, for appellee.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Defendants, city of Chicago and William Jackson, appeal from the trial court's denial of their post-trial motion alleging, amongst other things, error in jury instructions and the judgment entered upon the jury verdict awarding Helen Matelis, plaintiff, $111,661.75 in a personal injury action.

The testimony reveals that plaintiff, then 71 years old, was struck on the posterior of her left shoulder by a city of Chicago garbage truck, driven by William Jackson, a city CETA[1] employee and a defendant in this case. On the morning of the accident, October 18, 1977, plaintiff was returning from Northwestern Hospital where she had an eye examination relating to a cataract condition. Plaintiff exited a Chicago Transit Authority (CTA) bus at Pulaski Avenue and proceeded with the green light within the crosswalk, southward across Chicago Avenue. According to plaintiff, she was within five feet of the opposite curb and looking straight ahead when she was struck from behind. The impact knocked plaintiff to the ground. When she looked up she saw a blue city of Chicago garbage truck. Plaintiff was taken to the hospital where it was determined that she had sustained a broken humerus.[2] As the appeal does not involve a challenge to the sufficiency of the evidence, a detailed discussion of the damages will not be set forth.

Johnny Tucker testified on behalf of the defendants. Tucker, an assistant to William Jackson on the morning of the accident, was riding in the front passenger seat of the garbage truck. According to Tucker, the truck was facing southward on Pulaski Avenue waiting for the northbound traffic to clear in order to make a left hand turn onto Chicago Avenue. Tucker saw plaintiff crossing the street and observed

---

[1]The Comprehensive Employment and Training Act (CETA) (29 U.S.C. sec. 801 *et seq.* (1976)) provided job training and employment opportunities for economically disadvantaged, unemployed or underemployed persons leading to maximum employment opportunities and enhancing *self-sufficiency through a flexible decentralized sys*tem of Federal, State and local programs. 29 U.S.C.A. sec. 801 (1976).

[2]The humerus is the long bone of the upper arm, extending from the shoulder to the elbow. Dr. William Newman testified that plaintiff sustained a displaced fracture of the neck of the left humerus near the top joint, near the shoulder.

she had reached a point about six to eight feet from the south curb when the truck began its turn. The truck was in first gear and moving about three to four miles per hour when plaintiff turned around ("about face") and came back in the direction of the truck. Tucker looked away momentarily and the next thing he heard was the impact of the accident. Tucker stated that he could see from his position in the truck that plaintiff was elderly.

Plaintiff made a motion to bar Jackson from testifying for failure to respond to the pleadings or the notices for discovery in this case. The record does not indicate that a ruling was ever made on this motion. During the trial, Jackson was not called as a witness by either party. However, during closing argument, plaintiff's counsel told the jury that they would be instructed that Jackson's failure to testify allowed them to infer that his testimony would not have been favorable to defendants.

The instruction given by the trial court included plaintiff's instruction number 20, based upon Illinois Pattern Jury Instruction, Civil, No. 60.01 (2d ed. 1971) (hereinafter cited as IPI Civil), and the Illinois Vehicle Code, section 11—1003.1 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1003.1) which read as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any obviously confused, incapacitated person.

If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence."

In addition, plaintiff's instruction number 22, also challenged in this appeal, was given (IPI Civil No. 5.01) which read:

"If a party to this case has failed to produce a witness within their power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The witness was not equally available to an adverse

party.

3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to them.

4. No reasonable excuse for the failure has been shown."

The jury returned a verdict in favor of plaintiff with an award of $111,661.75. Judgment was entered on the verdict, and defendants' post-trial motion was denied.

## I

Defendants first contend that the trial court erred by submitting to the jury, over defendants' objection, plaintiff's instruction number 20, which was based upon section 11—1003.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1003.1), arguing that there was no evidence that plaintiff was "obviously confused" or "incapacitated." In support of their contention, defendants rely upon *Quigley v. Snoddy* (1968), 102 Ill. App. 2d 232, 242 N.E.2d 775, where the court found that the "obviously confused or incapacitated" language of the proposed instruction was properly refused when the evidence showed plaintiff to be 67 years old with Parkinson's Disease but that she did not walk across the road in other than an ordinary manner. 102 Ill. App. 2d 232, 237.

Here, the trial court initially refused to submit plaintiff's instruction number 20 but, following further argument by counsel, allowed it, concluding that the testimony showed some degree of incapacitation and confusion by plaintiff. Our review of the record leads us to believe that the trial court's conclusion was erroneous. The evidence shows that plaintiff was 71 years old at the time of the accident and was returning from the eye doctor. The evidence supports plaintiff's testimony that she walked across the street until she was struck from behind. A careful reading of plaintiff's testimony and the record clearly indicates there is no evidence of confusion or incapacitation of plaintiff sufficient to support plaintiff's instruction number 20. Even accepting defendants' testimony that plaintiff changed direction, which plaintiff denied, that by itself certainly cannot be considered as evidence of confusion or incapacity. If so, many, many people, by merely turning or changing direction, could be characterized as confused or incapacitated. Specific evidence is necessary of such a condition before such an instruction is justified.

During the discussion regarding plaintiff's instruction number 20, plaintiff argued that she was entitled to have the instruction submitted even though the evidence in support of the instruction was elic-

ited during defendants' presentation of their defense in this case. When deciding to submit the instruction to the jury the trial court recited the well established rule of law that "every party has the right to have the law applicable to *his case* stated fairly, clearly, distinctly and conveyed to the jury with substantial accuracy so that it may not be misled to the prejudice of the party." (Emphasis added.) (*Sims v. Chicago Transit Authority* (1955), 7 Ill. App. 2d 21, 29-30, 129 N.E.2d 23.) The instruction may be given so long as there is some evidence in the record to support the theory set out in the instruction. *Wrighthouse v. Brown* (1964), 52 Ill. App. 2d 191, 196, 201 N.E.2d 752.

■ Plaintiff tried the case on the theory that using ordinary care and free from contributory negligence, she walked across Chicago Avenue and was within five feet of the south curb when she was struck from the rear by defendants' truck. This was the theory she argued to the jury. The trial court instructed the jury on plaintiff's theory. Defendants' theory, based on the testimony of their witness Tucker, was that plaintiff turned around before she reached the south curb, and caused the impact. Plaintiff presented instruction number 20 arguing that she was entitled to an instruction on defendants' theory. The fallacy of plaintiff's argument is that there is no evidence in the record to establish plaintiff was either confused or incapacitated and, therefore, within the class intended to be protected by the statute (see IPI Civil No. 60.01, notes and comments (2d ed. 1971)).

## II

Defendants next contend that they were prejudiced by the trial court's decision to submit plaintiff's instruction number 22 to the jury, allowing the jury to infer that the testimony of William Jackson would have been adverse to defendants.

William Jackson, a CETA employee of the city of Chicago, was the driver of the garbage truck involved in this accident and is a party defendant. At trial, Jackson was not called as a witness. Plaintiff's counsel explained that, as a matter of trial strategy, he elected not to call Jackson as an adverse party (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102) because he believed the scope of cross-examination of Jackson as an adverse party would be limited. Following this assertion, and without explanation, the trial court allowed a negative inference instruction to be given over defendants' objection.

Plaintiff's belief that Jackson was not equally available to her due to a limited ability to impeach his testimony as an adverse party was misguided. Section 2—1102 of the Code of Civil Procedure (Ill. Rev.

Stat. 1981, ch. 110, par. 2—1102) provides in part:

> "Upon the trial of any case any party thereto *** may be called and examined as if under cross-examination at the instance of any adverse party. The party calling for the examination is not concluded thereby but may rebut the testimony thus given by countertestimony and may impeach the witness by proof of prior inconsistent statements."

■ Here, Jackson was a defendant. The record shows he was available at court during the trial to be called as an adverse party. Illinois courts have found that the failure to call a party opponent as an adverse party may give rise to a negative inference instruction against the party failing to call that adverse party. (*Pawlowic v. Pearce* (1965), 59 Ill. App. 2d 153, 158-59, 207 N.E.2d 155; see also *Scheck v. Evanston Cab Co.* (1968), 93 Ill. App. 2d 220, 225-26, 236 N.E.2d 258.) Since Jackson could have been called as an adverse party by plaintiff and was available to plaintiff, it was therefore erroneous for the trial court to allow a negative inference instruction to be given against defendants. *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 318, 367 N.E.2d 472 (where it is pointed out that each element of IPI Civil No. 5.01 must be met in order for the instruction to be given).

We conclude that by giving these two erroneous instructions, defendants were not provided a fair trial. Therefore, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.