RICHARD L. DODSON, Plaintiff-Appellant, *v.* RONALD B. SHAW *et al.*,
Defendants-Appellees.

Fifth District No. 82—332

Opinion filed March 22, 1983.

Robert D. Owen and W. Scott Murphy, both of Owen, Roberts, Susler & Murphy, P.C., of Decatur, for appellant.

James B. Wham and Richard A. Cary, both of Wham & Wham, of Centralia, for appellees.

JUSTICE KARNS delivered the opinion of the court:

Richard L. Dodson, plaintiff, brought this action against Shaw Contractors and Builders, defendant, alleging negligence and violations of the road construction injuries act (Ill. Rev. Stat. 1981, ch. 121, par. 314.1 *et seq.*). Judgment was entered on a jury verdict in favor of defendant in the circuit court of Fayette County, and plaintiff appeals.

In May of 1973, the State of Illinois requested bids for the proposed improvement of Camp Creek bridge located on the eastbound lanes of Interstate 70 east of Vandalia, Illinois. Defendant's bid was accepted and a construction contract was signed by the parties. The contract included standard State specifications for bridge construction and mandatory Federal provisions.

Construction began on the southernmost of the two lanes of the bridge in January of 1974. During the construction, traffic was directed to the north lane of the eastbound lanes by use of temporary traffic control devices. Pursuant to the contract, defendant painted a solid white traffic control line in the south lane. The lane was 880 feet long, beginning at the south edge of the south lane and angling towards the center line. The traffic control line merged with the center line at a point approximately 100 feet west of the bridge. Barricades were also placed at an angle in the south lane, and a temporary guardrail was placed on the center line of the bridge. The State, through the resident engineer for the job, approved defendant's temporary traffic control measures.

Before construction on the south lane was completed, an Arkansas Best Freight (ABF) tractor-trailer collided with the northeast bridge approach guardrail when traveling through the north lane. The guardrail was 100 feet long and was designed to protect errant vehi-

cles from striking the concrete bridge abutment. The collision tore out a large segment of the guardrail, leaving the bridge abutment unprotected. ABF paid defendant for removal and replacement of the guardrail; however, it was not replaced until construction on the bridge was complete, some time after plaintiff's accident.

In November, construction on the south lane was completed and the temporary guardrail and barricades were removed. A decision was made by the resident engineer and defendant's job superintendent not to attempt removal of the white traffic control line. Removal had proved difficult in the past and it was believed the line would be worn away by traffic. However, the line did not wear as planned and on December 12, jenite, a thick black liquid, was applied in an attempt to cover the line. The jenite failed so that on the date of plaintiff's accident the traffic control line was still visible. Several other attempts to eradicate the line were made following the accident.

Plaintiff's accident occurred on a dark and wet night in January 1975. Earlier in the evening, plaintiff and a friend, Dennis Moreland, drove from Pana, Illinois, to Vandalia, sharing a marijuana cigarette as they drove. In Vandalia, they each had a couple of beers while playing pool. About 6:30 p.m. they left, and after driving around Vandalia for a short time, plaintiff and Moreland set out for Effingham on I-70. According to plaintiff's testimony, he stopped the car just outside Vandalia so that Moreland could test drive the car. Moreland took over control of the car, smoking another marijuana cigarette as he drove. Plaintiff did not smoke but remembered feeling a little sick to his stomach. As they approached the Camp Creek bridge at about 60-65 miles per hour, plaintiff saw the traffic control line and said something to Moreland about it. Moreland, thinking they were to follow it, cut sharply to the left, causing the rear of the car to slide to the right. As the car continued to slide, plaintiff saw the gap in the guardrail but did not see the bridge abutment. The car then struck the bridge in a northerly direction, causing the bridge abutment to be driven four feet into the front of the car.

Police and medical personnel arrived at the accident scene shortly. Plaintiff was found pinned in the car just to the right of the steering wheel, his head through the windshield. Moreland was hanging from the passenger door. The driver of the wrecker and an ambulance attendant smelled alcohol at the scene. Both full and empty beer cans were found in the car and near the wreckage.

Plaintiff was taken to Fayette County Hospital in Vandalia and was then transferred to Decatur, Illinois. He remained in a coma for 11 days. After regaining consciousness, plaintiff was unable to recall

any details of the accident for a four- to six-week period. Thereafter, plaintiff progressively regained his memory. He was discharged from the hospital on March 24, 1975; although, he has continued to see doctors for headaches, dizziness and stiffness. Dennis Moreland is unable to remember anything about the accident.

■ The first issue raised by plaintiff on appeal is that the jury's verdict in favor of defendant on the road construction injuries act count (Ill. Rev. Stat. 1981, ch. 121, par. 314.1 *et seq.*) was against the manifest weight of the evidence. In our opinion the act does not apply to the plaintiff's claimed violations of the act at the Camp Creek construction site at the time of the accident.

The act's purpose is to protect workmen and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois. (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918.) Section 1 of the act provides:

> "All construction work upon bridges or highways within the State of Illinois shall be so performed and conducted that two-way traffic will be maintained when such is safe and practical, and when not safe and practical, or when any portion of the highway is obstructed, one-way traffic shall be maintained, unless the authorized agency in charge of said construction directs the road be closed to all traffic." (Ill. Rev. Stat. 1981, ch. 121, par. 314.1.)

Other sections of the act require the contractor to provide flagmen or traffic signals at construction sites where one-way traffic is utilized (Ill. Rev. Stat. 1981, ch. 121, par. 314.2) and require proper signs or barricades when highways or bridges are closed to all traffic (Ill. Rev. Stat. 1981, ch. 121, par. 314.4). Section 6 of the act imposes liability on contractors and drivers of motor vehicles for injuries to persons occasioned by knowing and wilful violations of the act. Ill. Rev. Stat. 1981, ch. 121, par. 314.6.

Although we acknowledge that the act, as a safety statute, is to be liberally construed (*Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 221, 433 N.E.2d 1337, 1343-44), we cannot ignore the plain language of the act. It is obviously concerned with the unusually dangerous situation where a highway is closed altogether (Ill. Rev. Stat. 1981, ch. 121, pars. 314.2, 314.3), or there is only one lane of traffic for use by vehicles traveling in opposite directions (Ill. Rev. Stat. 1981, ch. 121, pars. 314.2, 314.3). Neither situation was present at Camp Creek, where two-way traffic was maintained at all times, and the statute is, therefore, inapplicable.

██ Should we adopt plaintiff's construction of the act, it would be applicable to almost any accident that one could conceive that occurred while construction work of some sort was being performed on any highway or bridge in this State, even though at the time of the accident the roadway was open to two-way traffic. An analysis of the provisions of the act would render them meaningless when applied to situations where the roadway was open to two-way traffic.

Plaintiff's instructions told the jury that the construction injuries act provided that all construction work upon bridges and highways "shall be so performed and conducted that two-way traffic will be maintained when such is safe and practical" and that a contractor must comply with this act. The jury was told in general terms that the defendant violated the act if the work on the bridge at I-70 was so performed that two-way traffic was maintained when it was not safe and practical. The jury was further told that failure to replace the guardrail and remove the white line were violations of the act if found to be the proximate cause of plaintiff's injuries.

But the construction injuries act only states that two-way traffic will be maintained if safe and practical and if not, one-way traffic shall be maintained unless closed by the State authorities. If one-way traffic is maintained, the act is specific as to the duty of a contractor. He must provide flagmen, signals and traffic control devices to warn approaching motorists that only one lane is open.

██ Regardless of the applicability of the act, plaintiff's tendered instructions, which were overly favorable to plaintiff, were given by the court, and the jury found that defendant did not commit a knowing and wilful violation of the act and that the presence of the white line and the absence of a guardrail had nothing to do with the accident. If the driver had followed the white line, he would simply have been directed into the northernmost lane of the two lanes reserved for eastbound traffic. The duty of a contractor under the act is limited to providing flagmen and traffic signals where one-way traffic is maintained and barricades and signs where the roadway or bridge is closed altogether. Plaintiff does not argue that the highway should have been closed, as indeed defendant would have been powerless so to do, nor does he argue that flagmen or signals should have been furnished by defendant. We simply do not agree with his argument that the presence of the white line and the absence of the guardrail were wilful violations of the construction injuries act as a matter of law. Nor could we agree, in any event, that these two conditions constituted a proximate cause of plaintiff's injuries as a matter of law.

██ The second issue raised concerns the common law negligence

claim. Plaintiff's alleged acts of negligence were the same as the claimed violations of the construction injuries act; that defendant was negligent by failing to remove the white traffic control line and by failing to repair or replace the northeast bridge approach guardrail. The jury returned a general verdict in favor of defendant and by special interrogatory determined that plaintiff was not the sole proximate cause of his injuries.

Defendant initially claims it was under no duty to remove the traffic control line or replace the guardrail as it complied with the State highway department's plans and specifications in performing the work. We disagree. Defendant has a common law duty to protect the traveling public from dangerous conditions created by its construction activities. (*Mora v. State* (1977), 68 Ill. 2d 223, 369 N.E.2d 868; *Koches v. Chicago & Illinois Midland Ry. Co.* (1983), 112 Ill. App. 3d 851.) We decline to read *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, relied upon by defendant, so broadly as to preclude the imposition of common law duties here simply because defendant had complied with the specifications in his contract with the State. In *Blasius*, the supreme court held that an independent contractor who fabricated a chattel, a highway sign, is under no duty to third persons if he strictly complies with the contract specifications provided to him by the State, unless they result in an obviously dangerous condition. (74 Ill. 2d 203, 209-10, 384 N.E.2d 368, 371.) While it is true that the State did not require defendant to replace the guardrails at Camp Creek until completion of the project, the State did so because it had no reason to anticipate that they would be damaged prior to completion. When the ABF truck damaged the guardrail, we believe that the defendant could not rely on the State's failure to require replacement to escape any potential liability as a matter of law.

Plaintiff contends that the evidence also shows, even when viewed in a light most favorable to defendant, that defendant was negligent and his negligence was a proximate cause of plaintiff's injuries.

■ We turn first to defendant's failure to remove the white traffic control line. There is an abundance of evidence to support a finding that defendant was not negligent. The record indicates that the removal of the lines has always been a problem. In fact, there was testimony that sandblasting, a method used only after all others have failed, leaves a white line of its own on the roadway. Since the evidence shows defendant made every feasible effort to remove the line, the jury could reasonably conclude that defendant was simply not negligent. The jury may also have been persuaded by the State's figures

showing that thousands of vehicles had traveled safely over the Camp Creek bridge while the line was visible.

The jury could consider the slight angle of the line in determining that it was not a proximate cause of plaintiff's injuries. The line was 880 feet long and ended approximately 100 feet from the bridge. It angled from the south edge of the double lane to the center line, a distance of only 12 feet. Finally, it is to be remembered that plaintiff was the only witness to the accident and in view of his severe head injury and resulting retrograde amnesia, the jury was free to reject his testimony that Moreland swerved the car in reaction to the line. In short, the jury could conclude that the presence of the line simply had nothing to do with the accident.

We now turn to the bridge approach guardrail. The evidence established that the guardrail was designed to prevent potential accidents of the kind of head-on collision with a bridge abutment that plaintiff argues occurred here. Of course, the jury was not required to adopt defendant's version of the occurrence.

Moreover, even if one could conclude that the failure to replace the guardrail was negligence, the jury could find that defendant's negligence was not a proximate cause of plaintiff's injury. Plaintiff has argued the proximate cause issue vigorously, claiming that the jury was misled as to the proper focus of proximate cause. He insists that the question is not who caused the accident but what caused the injuries. He then argues that the jury had to find defendant's negligence at least a proximate cause of his injuries since had the guardrail been replaced, plaintiff would have suffered no or substantially fewer injuries. Plaintiff supports his theory that the jury was misled, by the instructions, which we would note are largely the plaintiff's and in defense counsel's closing argument, to which we would further note no objection was made. He also notes that the jury's confusion was demonstrated when it returned a general verdict that was inconsistent with its response to the special interrogatory.

■ We are not persuaded by plaintiff's analysis. Whether plaintiff focuses on his injuries or the accident, there is simply no conclusive or compelling evidence that had the guardrail been replaced, it would have prevented what occurred.

Expert testimony established that a guardrail will redirect an errant vehicle weighing 4,000 pounds that strikes the guardrail at 60 miles per hour at a 25° angle of impact. The expert stressed, however, that when any one factor is exceeded there is a high probability that the guardrail will not work as designed. Plaintiff's evidence does not conform to the formula. Plaintiff's own testimony was that they

may have been going 65 miles per hour. More important, plaintiff presented no evidence that the angle of impact was 25° or less. When a car traveling at 60-65 miles per hour strikes at an angle beyond 25°, the guardrail itself becomes a hazard, causing severe injury or death. We also observe that when plaintiff elicited the expert's opinion during an offer of proof of the difference in plaintiff's injuries had the guardrail been replaced, the hypothetical assumed an angle "of not more than a couple of degrees." Finally, there was evidence that the car may have struck the bridge abutment and not have struck the guardrail had it been there. It should be clear from this discussion that plaintiff's expert testimony which concluded that plaintiff would have suffered substantially fewer injuries had the guardrail been replaced was properly excluded. Without evidence of the angle of impact, the opinion was made without proper foundation.

Inasmuch as the jury could well conclude that the condition of the line and guardrail was not a proximate cause of plaintiff's injuries, it is unnecessary to address plaintiff's claim that defense counsel misled the jury by focusing on the cause of the accident rather than on the extent of plaintiff's injuries. No objection was made to defendant's argument and plaintiff's theory was fully argued to the jury. We will, however, discuss plaintiff's claim that the instructions were in error and that the general verdict and special interrogatory were inconsistent.

■■ ■ Plaintiff's specific complaint is of the use of the words "sole proximate cause" in the instructions. It is true that under the comparative negligence doctrine of *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the jury cannot be required to find only one proximate cause. The instructions, all from Illinois Pattern Jury Instructions (IPI), Civil (2d ed. 1971) were not in error in this regard. The definition of proximate cause included the language, "It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury." (IPI Civil No. 15.01.) Whenever the words "sole proximate cause" were used in the instructions, the jury was not being asked to find a sole cause, but instead were told, for instance, that if someone other than defendant was the sole proximate cause of the injuries, then the verdict must be for defendant. This is a correct statement of the law. We also point out that plaintiff's objections to the instructions, when made, were rarely directed to the sole proximate cause language.

We next consider whether the jury's general verdict was inconsistent with its negative response to the following special interrogatory,

"Was Richard Dodson guilty of negligence, which was the sole proximate cause of his injuries?"

■■ ■ A general verdict and a special interrogatory will not be found inconsistent except if they are clearly and absolutely irreconcilable. (*Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453, 455.) We find no inconsistency in this case. A most persuasive reason for the interrogatory answer is that the jury found no credible evidence of just what did cause the accident. Plaintiff was the only eyewitness, and his testimony was discredited by an expert who concluded that plaintiff's memory of the accident was permanently lost due to his severe head injury. With lack of evidence, the jury could not conclude whether Dodson was the sole proximate cause of his injuries. The jury could also decide, although such a conclusion would belie the physical evidence, that Moreland was the driver of the car and that he was a cause of the injuries.

Another issue raised concerns the expert testimony to which we have referred earlier. Dr. William Landau, an eminently qualified neurologist, testified that plaintiff suffered from traumatic retrograde amnesia, the loss of memory of events leading up to a traumatic accident. Landau explained that the duration and permanence of retrograde amnesia is dependent upon the severity of the head injury. In plaintiff's case, the head injury was so severe that plaintiff remained in a post-trauma coma for 11 days. As a result, plaintiff's memory was slow to return and some memory loss was permanent. Plaintiff's neurologist, Dr. John L. Hubbard, testified to the same effect.

Landau further testified that considering the severity of plaintiff's head injury, it was not possible for plaintiff to have the kind of detailed memory of the accident he demonstrated while testifying. Landau testified that plaintiff's detailed testimony is explained by a phenomenon known as confabulation. A patient who confabulates is attempting to fill in the gaps in his memory caused by retrograde amnesia. It is this testimony that plaintiff objects to as invading the province of the jury on an ultimate issue, the memory and credibility of a witness.

■■ ■ We emphasize that the cases favor the permissive use of expert testimony in all types of cases where the jury would be aided in its understanding of the facts. Expert testimony will be admissible even when directed toward an ultimate issue since the jury is free to reject the testimony. (*People v. Slago* (1978), 58 Ill. App. 3d 1009, 1015-16, 374 N.E.2d 1270, 1275.) The subject of retrograde amnesia has been held a proper subject for expert testimony. *People v. Rice* (1975), 40 Ill. App. 3d 667, 671, 352 N.E.2d 452, 456; *Pool v. Day*

(1936), 143 Kan. 226, 53 P.2d 912.

 Plaintiff further contends that his memory cannot be challenged by another witness. Ordinarily a witness' memory is tested by cross-examination and one witness is not permitted to judge the truthfulness of another's testimony. (*Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 415-16, 179 N.E.2d 449, 454.) However, where credibility of a witness' memory is due to abnormalities, such as retrograde amnesia, a witness may testify to facts which, if believed by the jury, would discredit the witness. *Fries v. Berberich* (Mo. App. 1944), 177 S.W.2d 640, 643.

 Finally, plaintiff argues that defense counsel, after the court had ruled there was insufficient evidence to establish intoxication, argued to the jury that plaintiff was intoxicated at the time of the accident. However, in reviewing the record, it is apparent that defense counsel merely asked the jury to consider how much plaintiff had to drink. In light of the fact that plaintiff, apparently as part of his trial strategy, chose to open up the subject of intoxication, as well as marijuana use, and the fact that plaintiff made no objection during closing, we can find no error in defense counsel's remarks.

Unfortunately, a large part of both parties' briefs has been devoted to allegations of misconduct by counsel. While we will not address each of the complaints, which we find to be groundless, we make the following comments.

Plaintiff has particularly emphasized an incident involving several pages of documents entitled, "Required Contract Provisions—All Federal Aid Construction Contracts," which are included in every contract where the government provides a substantial part of the funds. Although the provisions were a part of the Camp Creek contract, they were not discovered until near the end of plaintiff's case in chief. Plaintiff claims defendant intentionally withheld the provisions and as a result he was prejudiced in presenting his case.

We cannot accept plaintiff's argument. The colloquy in the record makes it clear that defense counsel was as surprised as plaintiff that the provisions existed. In addition, plaintiff's counsel did not claim intentional wrongdoing at the time. Plaintiff's counsel stated, "I am not raising *** an inference in the record that you are *** attempting to hide anything."

There was also no prejudice to plaintiff. The provisions only reiterated the common law duty that a contractor must take any action reasonably necessary to protect the safety of the public. We also point out that plaintiff did not claim prejudice nor ask for discovery sanctions or a mistrial.

We next consider plaintiff's allegation that defendant, during *voir dire* of a witness concerning several of plaintiff's exhibits, intimated that plaintiff had altered and concealed material evidence in connection with the exhibits. We conclude that if defendant's *voir dire* was improper, and we do not believe it was, the situation was corrected by the court's statement to the jury that "all of the photographs testified to *** including the notations on sheets of paper to which the photographs were once attached have been previously furnished to counsel for the defendant by counsel for the plaintiff and they have not been modified in any way or respect."

We have carefully reviewed the remaining allegations of misconduct and the record and conclude that none warrant reversal or discussion. The trial court is to be commended for the manner in which it conducted this long and difficult trial.

The judgment of the circuit court of Fayette County is affirmed.

Affirmed.

HARRISON, P.J., and WELCH, J., concur.