No. 27864.—

HARRY M. AVANCE, Appellee, *vs.* GUY A. THOMPSON, Trustee of Missouri Pacific Railroad Company, Appellant.

*Opinion filed May 16, 1944.*

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, (T. T. RAILEY, of St. Louis, Mo., of counsel,) for appellant.

JOSEPH B. McGLYNN, of East St. Louis, ROBERT J. McDONALD, and WILLIAM H. DEPARCQ, both of Minneapolis, Minn., for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff, Harry M. Avance, brought suit against Guy A. Thompson, trustee of the Missouri Pacific Railroad Company, in the circuit court of St. Clair county to recover under the Federal Employers' Liability Act for injuries sustained while employed as a brakeman. The trial resulted in a verdict for the plaintiff of $125,000. On motion for a new trial plaintiff assented to a remittitur of $25,000 and judgment was entered against defendant for $100,000. The Appellate Court for the Fourth District affirmed the judgment, and we have allowed an appeal to this court.

The complaint consisted of one count which charged the employment of the plaintiff as a freight brakeman in furtherance of a movement in interstate commerce at Bismarck, Missouri, January 17, 1942, and alleges the defendant violated the Federal Employers' Liability Act (1) in negligently operating certain cars causing them to collide with cars on which plaintiff was riding with unnecessary violence, by reason of which plaintiff was thrown from the car, run over and injured, and (2) in negligently kicking some cars against cars upon which plaintiff was working, without warning, resulting in the fall and injury. The defendant denied that at the time of the accident plaintiff was engaged in the furtherance of interstate commerce; denied the negligence charged; denied the injuries were the result of defendant's negligence, and averred affirmatively that the plaintiff's injuries were proximately caused by his own negligence, and that the plaintiff's rights were covered by the workmen's compensation law of the State of Missouri. On demand of plaintiff defendant filed a number of admissions pertaining to the commerce character of the plaintiff's employment. Before the trial started the part of the answer referring to the workmen's compensation law of the State of Missouri was stricken on the motion of plaintiff.

The appellant contends the plaintiff did not prove the appellee was engaged in the furtherance of interstate commerce; and also that the court erred in giving an instruction that the plaintiff and defendant were engaged in interstate commerce and transportation at the time of the accident.

Briefly the facts show that plaintiff was about twenty-two years of age, lived at Poplar Bluff, Missouri, and was a brakeman on a train operating between Poplar Bluff and Bismarck, Missouri. In Poplar Bluff the train was made up by a switching crew; at the Bismarck terminal the train crew did the switching in the yards to make up the train. January 16, 1942, the train was operated from Poplar Bluff to Bismarck, arriving at about two o'clock in the afternoon. The crew had nothing more to do that day. On the following morning the plaintiff reported at the yards around about 6:30 and commenced the switching operations to make up the freight train which would return to Poplar Bluff that day. In the yards where this was being done the track known as the lead track ran in a northerly and southerly direction. A track leading to the coal chute branched off from this track. On this coal-chute track at a point northerly of the switch was a cut of five coal cars, two loaded and three empty. The two loaded cars were on the north end of the cut. It was the purpose to remove the three empty coal cars so they could be put over in the yards, and after they were pushed on to another switch to spot the loaded cars on the coal-chute track. In the meantime the engine attached to two boxcars and a tank car was on the same track to the north. It backed these cars into the chute track, coupled on to the five cars already there and proceeded to the north until it was beyond the switch from the coal-chute track to the lead track. The immediate object was to kick the three empty coal cars to the south far enough up the lead track to clear the switch, thus rendering it possible, when they had been

disconnected, to push the two loaded cars of coal south again, past the switch to the coal chute.

The plaintiff was riding one of the empty cars that was to be pushed into the lead track, and while this operation was being carried on he claims he was knocked off by an unusually hard bump and lost both legs. There is some disagreement as to how this occurred, the plaintiff claiming that while the entire cut was moving very slowly it was suddenly bumped by the movement of the engine crew, causing him to fall. Other witnesses testified that the three empty cars were cut loose and failed to move far enough down the track to clear the switch, and then in order to get them past the switch point the engine came down and made a coupling to push them over rather than to kick them over, and that plaintiff was warned of this movement. At any rate, while the plaintiff was riding upon the three empty cars he fell and was injured.

Of the three cars connected with the engine one was an empty tank car known as PTX 4741. It is contended this car was one that was moving interstate from a point in Illinois to one in Arkansas. This car came from the Missouri and Illinois Railroad, and a part of the duties of the crew that morning was to switch cars from the Missouri and Illinois Railroad in the yards, as well as make up the train going from Bismarck, Missouri, to Poplar Bluff, Missouri. The PTX 4741 car was arriving with the Missouri and Illinois Railroad train. It is claimed by plaintiff that this and other cars switched at the coal chute came from Illinois. Defendant says there is no proof that they came any further than from Ste. Genevieve, Missouri.

The contention of the appellant is twofold: (1) that until the train from Bismarck to Poplar Bluff was made up plaintiff's crew was engaged entirely in a switching operation, and that the work in which they were actually engaged at the time of the accident was moving the three empty cars which were to remain in the yards so they could

spot the loaded coal cars at the chute, and (2) that the movement of the PTX 4741 car attached to the engine had no relation to interstate commerce, and was only moved with the engine and other cars in connection with switching the empty cars in the yards. It is also contended that, since there was some evidence to show that the PTX 4741 car started in Missouri instead of Illinois, it was not yet in interstate movement before the train had been made up to start it on its way on an interstate movement to a point in Arkansas.

Whether appellee was engaged in work connected with interstate commerce largely hinges around the movement of this empty tank car PTX 4741. As stated, it came in over the Missouri and Illinois Railroad with two other cars which were on the coal-chute switch. One witness tracing the movements of these cars says they came from Ste. Genevieve, Missouri, but there is nothing to show how this car got to Ste. Genevieve. It does not appear that this tank car was billed when it came into Bismarck. It was not on the switching list at the Bismarck yards when the train was made up and left at 10:50 A. M., but more than an hour after the accident it was in a train on which plaintiff had worked, billed to Texarkana, Arkansas. If it was billed when it left Ste. Genevieve, Missouri, to Texarkana, Arkansas, it could be inferred it was in interstate commerce. If it came into the Bismarck yards unbilled and it was designated and started in interstate commerce after the plaintiff's injury there could be a serious question whether the moving of this car was connected with interstate commerce. The billing or destination of the other cars in the switching movement coming from Ste. Genevieve does not appear, nor did they go out on the train after it was made up. When the train on which plaintiff regularly worked left Bismarck at 10:50 A. M. it contained twelve cars, and only PTX 4741 was interstate. The admission of defendant applies to the interstate movements

of the train in question during the entire day of January 17, 1942, which does not necessarily admit such movements occurred at or prior to the time of plaintiff's accident.

The movements thus far are detailed only to determine whether the court was justified in giving an instruction to the jury that the plaintiff and defendant were engaged in interstate commerce at the time the accident occurred. We are not convinced that plaintiff's duties at the time of the accident are so conclusively shown to be in furtherance of, or were so substantially connected with, interstate commerce as to authorize the trial court to decide such question as one of law instead of leaving it to the jury.

The allegation in the complaint that the plaintiff's duties were in connection with interstate commerce was one of the contested issues in the case, and raises the question whether, under the facts, the trial court should have instructed the jury that such allegation had been established as a matter of law. The rule laid down is that where the facts are in dispute, or more than one inference can be drawn from them, the question whether the injured employee was at the time in interstate commerce is a question for the jury. (*Pennsylvania Co.* v. *Donat,* 239 U. S. 50, 60 L. ed. 139; *Southern Railroad Co.* v. *Lloyd,* 239 U. S. 496, 60 L. ed. 402.) The amendment of 1939, U. S. C. A. Title No. 45, sec. 51, has not changed the rule in this respect.

The charge to the jury that the plaintiff and the defendant were engaged in interestate commerce at the time of the accident, taken in connection with plaintiff's instruction No. 8, left only one issue in the case. Instruction No. 8 advised the jury that if it believed from a preponderance of the evidence and under the instructions of the court that the defendant was guilty of negligent conduct in either of the respects charged in the complaint, and that as a direct and proximate result the plaintiff was injured, it should find the defendant guilty. The plaintiff, before he

could recover, was required to establish two elements, one being connected with interstate commerce and the other negligence directly resulting in his injury. The effect of these two instructions was to direct the jury to find for the plaintiff upon the proof of negligence, alone. Under the facts, we think both issues should have been submitted to the jury, and a failure to do so constituted error. This renders unnecessary a consideration of the other instructions objected to by appellant.

During the course of the trial the court permitted the plaintiff to offer in evidence mortality tables which showed that a person twenty-three years of age has an expectancy of life of 40.17 years. An instruction was also given in connection with this mortality table as affecting the measure of the plaintiff's recovery. Defendant objected to this evidence and also assigns it as error. In *Chicago, Burlington and Quincy Railway Co.* v. *Johnson,* 36 Ill. App. 564, such evidence in a case where there were injuries was held improper. In *Calvert* v. *Springfield Electric Light and Power Co.* 231 Ill. 290, we held mortality tables were competent evidence in actions for wrongful death. And in *Vicksburg & M. R. R. Co.* v. *Putnam,* 118 U. S. 545, it was held they were competent evidence in actions for personal injuries. They were also held competent in *Louisville & N. R. R. Co.* v. *Burns,* 242 Fed. 411, and *Coast S. S. Co.* v. *Brady,* 8 Fed. 2d 16, both of which were personal injury cases. In *Colusa Mining Co.* v. *Monahan,* 162 Fed. 276, it was held in a personal injury action not error to show the expectancy of life in fixing an amount required to produce an annuity for a life term equal to the difference between the amount which the injured person would have earned if he had not been injured and that which he could earn in his injured state. We believe that the weight of authority permits the introduction of mortality tables in personal injury accidents when the injury is permanent.

Among other things, the plaintiff's instruction No. 12 advised the jury that in assessing damages it should take into consideration the amount of earnings he would lose in the future in consequence of his injuries and determine the present cash value of such pecuniary benefits, and make allowance for the earning power of money. The most common and usual use for mortality tables is to fix the present value of life interests of persons in money or property. In such instances the income is fixed for a period of life and there can be no question of diminution by accident, illness, lack of employment or similar hazards. The income is derived from property and not employment, so the use of mortality tables is a fairly certain method of ascertaining its present value. Such elements of certainty do not exist in matters of employment, and consequently a jury is apt to be confused as to the application of mortality tables in a personal injury suit. Very few persons, without the aid of other tables, can compute the present value of a fixed annual income from the expectancy of life alone.

The jury should be carefully instructed as to the purposes for which such tables may be considered in fixing pecuniary damages. It should be advised that the expectancy of life should not be used as a factor by multiplying the years of expectancy by the annual earnings, because to allow this would permit this plaintiff to receive in advance forty years earnings without consideration of other circumstances which might materially reduce his pecuniary loss.

There are some authorities which hold that where mortality tables are given in evidence defendant cannot complain, in the absence of a request for instructions to define their use. We think the use, alone, of the years of life expectancy in such tables has such probability of confusing a jury that a failure to explain their application by instructions from the court would have a prejudicial effect. In

the present case, we would not reverse because of this evidence, alone, but since a new trial is necessary we are expressing our views for the benefit of the parties in case the tables should be again offered in evidence.

Because of the error in taking from the jury one of the material elements of the plaintiff's case by giving a peremptory instruction that interstate commerce had been established by the plaintiff, as a matter of law, the judgment of the Appellate Court for the Fourth District and of the circuit court of St. Clair county will be reversed and said cause remanded to the circuit court for a new trial.

*Reversed and remanded.*