BRIAN WETHERELL, a Minor, by Linda Wetherell, his Mother and Guardian, Plaintiff-Appellant, *v.* ROBERT MATSON *et al.*, Defendants-Appellees.

Fourth District   No. 14019

Opinion filed August 31, 1977.—Rehearing denied October 4, 1977.

David A. Dvorak, of Burger, Fombelle, Wheeler & Dvorak, P. C., and Ronald L. Carpel, both of Decatur, for appellant.

Robert D. Owen and W. Scott Murphy, both of Owen, Roberts, Susler & Taylor, of Decatur, for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The jury returned a $9,000 verdict against both defendants and we are here concerned only with the issue of damages, not liability.

Plaintiff Brian Wetherell, then age 5, was injured when defendant Robert Matson, then age 13, operating a riding lawn mower upon the premises of his father, Donald Matson, backed the mower over plaintiff's foot. Plaintiff had been playing in Matson's yard just prior to the accident. Robert Matson testified that after he saw plaintiff get on his bicycle and ride off down the sidewalk, he started the mower and made one pass around the yard. Having missed a patch of grass, Robert then looked over his right shoulder at the spot he had missed and backed up without looking over his left shoulder. He then heard the motor clutter, saw part of a shoe fly out and heard a scream. The engine stopped and young Matson saw plaintiff lying on the grass behind him with his foot under the mower.

At the hospital emergency room, plaintiff was treated by Dr. Joseph Ankenbrandt, a Decatur orthopedic surgeon. He treated plaintiff's wound by cleaning it, amputating the third toe and amputating the proximal portion of the fourth toe and placing plaintiff's leg in a cast. Plaintiff was hospitalized for nine days. The doctor surmised that pain persisted for two or three months with some aching for an additional three to six months.

As the result of the injury, growth centers in plaintiff's right foot were injured causing that foot to grow more slowly than the left. The doctor testified irregular growth of the metatarsals may very likely prevent the smooth tapering of a weight-bearing surface. The second toe is deformed and tends to stand up due to tendon imbalance. The doctor observed "an adductive deformity of the fifth toe" which he explained is the fifth toe drifting towards the place formerly occupied by the third and fourth toes because these are no longer there to act as a spacer. He characterized the plaintiff's injury as permanent with moderate impairment.

The plaintiff is required to wear split size shoes and will likely be required to undergo one or more of the following procedures: (1) A

second toe reconstruction; (2) removal or revision of the residual metatarsal heads to create a reasonable weight-bearing surface; and (3) a tendon transfer or stabilization. Dr. Ankenbrandt judged there to be a 75% likelihood that the plaintiff would require further surgery on the second toe whereas he saw only a 20-25% possibility that either of the other two operations would be required. He explained that the need for further corrective surgery could only be assessed "within a year or two after he [plaintiff] is full grown when he is sixteen or seventeen years old." The doctor estimated that a reasonable fee for operations (1) and (2) would be around $400 at current rates, plus a $600-$800 hospital bill. Following Dr. Ankenbrandt's testimony, the court granted defendant's motion to strike the portion of the testimony pertaining to future medical expenses on the basis that such costs would be incurred, if at all, while plaintiff was still a minor, in which case they would be the obligation of the parents.

Plaintiff's mother testified that he was in a great deal of pain while in the hospital. She described her son as an active, normal 5-year-old prior to the accident. Since his recovery he has been able to engage in sports and most of the activities he enjoys. When he tires, he drags his injured foot, turns it inward and walks on the inside of his foot. On occasion, people have remarked about plaintiff's deformity, causing him considerable embarrassment.

Finally, Mrs. Wetherell testified that Brian had seen Dr. Schrodt, another orthopedic surgeon, two months prior to trial. Dr. Schrodt was not called as a witness by either side. There was no evidence that Dr. Schrodt was not available to testify or that he could not have been called by the defendant. During closing argument defense counsel brought up the subject of Dr. Schrodt saying:

> "There is another X-ray over here that is interesting, and I am not going to put it on any shadow box, all I am going to do is read the legend where it says 2/27/76, Dr. Schrodt. You heard Mrs. Wetherell say that they had this young man to Dr. Schrodt less than two months ago today, almost a year after he had been seen by Dr. Ankenbrandt. And they want you to speculate that his conditions are getting bad but they don't bring the Doctor that knows them later than the Doctor they presented and you can consider that pretty strongly, ladies and gentlemen."

In rebuttal, plaintiff's attorney tried to explain his failure to call Dr. Schrodt saying:

> "Now, I want to talk a little bit again about the subject of damages. Now, Mr. Owen told you in his final argument that the boy went to Dr. Schrodt. Well, Doctors are busy people, and Dr. Schrodt was going to say the same thing—."

The following colloquy then ensued:

"MR. OWEN: Now, if the Court please, again I will make a motion, and I think it is time to stop some of this.

MR. DVORAK: Judge, he opened the subject up.

THE COURT: It is only a comment on a witness that was not called. You may not say what that witness might have said. No evidence of that.

MR. OWEN: I would submit, if the Court please, the Court give the instruction that tells the jury they·they [sic] may consider it would have been against the plaintiff. It is a proper instruction in this area.

THE COURT: There is an instruction that says that if a witness is not called you may infer that the testimony was adverse.

MR. DVORAK: Your Honor, but that instruction only applies when the witness is not equally accessible to both sides.

THE COURT: Proceed with your argument.

MR. DVORAK: Very well, Your Honor. Ladies and gentlemen, I suggest to you that whether or not Dr. Schrodt was here or not is of no importance without saying any more, and I ask you to use your own common sense on that."

The parties stipulated that plaintiff's life expectancy was 64.8 years. Plaintiff's counsel explained in closing that this figure is an average, that plaintiff could live longer or he could live less. Plaintiff's mortality table instructions were then refused. Several photographs of plaintiff's foot were allowed to go to the jury room for deliberation while the X rays, which had been admitted into evidence, were not.

The jury returned a verdict for $9,000 against both defendants. Plaintiff's post-trial motion sought a new trial on damages only. When it was· denied, plaintiff appealed.

■ Plaintiff raises several issues for review. First, he contends it was error for the court to refuse his tendered mortality table instructions. We disagree. Plaintiff's reliance on *Avance v. Thompson* (1944), 387 Ill. 77, 55 N.E.2d 57, *cert. denied* (1944), 323 U.S. 753, is misplaced. *Avance* discussed the confusion and prejudice which may result where mortality tables are introduced into evidence without instructions on their use. There the court explained: "It should be advised that the expectancy of life should not be used as a factor by multiplying the years of expectancy by the annual earnings, because to allow this would permit this plaintiff to receive in advance forty years earnings * * *." (387 Ill. 77, 84, 55 N.E.2d 57, 60.) The focus of the court's concern in *Avance*—exaggerated computation of lost earnings—is not an issue here since plaintiff is not claiming lost earnings. But more importantly, any prejudice resulting from failure to instruct would have benefited the plaintiff. There is no hint in *Avance,* nor in plaintiff's brief or argument here, how confusion over

lack of instructions could have prejudiced the plaintiff. Without such a showing there can be no reversible error.

■■■ Next, plaintiff argues that it was an abuse of discretion for the trial court to refuse to let the X rays go to the jury room after they had been admitted into evidence. Under section 67(4) of the Civil Practice Act: "Papers read or received in evidence, other than depositions, may be carried from the bar by the jury." (Ill. Rev. Stat. 1975, ch. 110, par. 67(4).) Under this provision the trial judge has considerable discretion as to the exhibits which may be taken to the jury room. (*Lamphere v. Old Second National Bank* (1976), 39 Ill. App. 3d 610, 350 N.E.2d 272.) Clearly, it is proper to allow X ray exhibits to be given to the jury for deliberations. (*Kavale v. Morton Salt Co.* (1928), 329 Ill. 445, 160 N.E. 752; *Cooney v. Hughes* (1941), 310 Ill. App. 371, 34 N.E.2d 566.) While it would have been preferable to allow the X rays to be taken to the jury room for deliberations, we cannot say that it was an abuse of discretion not to do so.

We need not decide the propriety of striking Dr. Ankenbrandt's testimony and refusing a jury instruction concerning the cost of future medical treatment. It is highly unlikely that in the event of a retrial Dr. Ankenbrandt's testimony on this point would remain so ambiguous. The parties would surely question the doctor carefully in order to determine whether or not the need for future corrective surgery would have to be determined prior to plaintiff's 18th birthday and whether the surgery would necessarily be performed by that time.

Next, plaintiff contends that remarks made in defendant's closing argument concerning plaintiff's failure to call Dr. Schrodt as a witness were reversible error. Clearly, defense counsel's reference to Dr. Schrodt in closing argument was an overt attempt to persuade the jury to draw adverse inferences against plaintiff for failing to produce Dr. Schrodt as a witness.

■■ Under Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971), an instruction allowing an adverse inference from a party's failure to produce a witness is only warranted when some foundation evidence is presented on each of the four following elements: (1) The witness was under the control of the party (plaintiff here) and could have been produced by the exercise of reasonable diligence; (2) the witness was not equally available to an adverse party (defendant here); (3) a reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him; and (4) no reasonable excuse for the failure has been shown. Accord, *Hoff v. Yellow Cab Co.* (1964), 53 Ill. App. 2d 333, 203 N.E.2d 8.

At oral argument defendant maintained that the requirements for giving IPI 5.01 are different, and presumably greater, than the

permissible scope of comment during closing argument in this regard. We are unaware of, nor has defendant provided us with, any authority to support such a distinction. To accept defendant's argument would require plaintiff to produce every doctor who treated him or be faced with defendant's insinuations that other, later treating physicians, would have testified adversely. In the context of the present case, the prejudice is obvious. Through defense counsel's remarks in the ensuing argument between the attorneys and the court, the jury could have concluded that plaintiff was hiding something—that Dr. Schrodt was not called because his testimony would have been adverse to the plaintiff. Such argument is improper and prejudicial.

Defendant's belief that failure to call a witness is always the subject of comment is presumably based on the line of cases which say that the failure of a litigant to call a witness *within his control* is a proper subject of comment. (*In re Estate of Sandusky* (1943), 321 Ill. App. 1, 52 N.E.2d 285; *Consolidated Coal Co. v. Scheiber* (1897), 167 Ill. 539, 47 N.E. 1052.) However, this rule has no application here since there was no suggestion that Dr. Schrodt was under plaintiff's control.

■■ It has been held that where a party fails to show that the missing witness was under the opposing party's control, the court may refuse to allow comment on the subject. (*Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 315 N.E.2d 63; *Bunton v. Illinois Central R.R. Co.* (1957), 15 Ill. App. 2d 311, 146 N.E.2d 205; *Wofford v. DeVore* (1966), 73 Ill. App. 2d 92, 218 N.E.2d 649.) Given the relatively low verdict, we hold that defense counsel's improper comment on Dr. Schrodt's failure to testify was reversible error. While it could have had no bearing on liability, it arguably contributed to the size of the verdict and warrants a new trial on damages.

Finally, we need not consider whether the verdict was so clearly inadequate as to warrant a new trial on damages. This issue may become moot upon retrial or in the event of settlement.

For the foregoing reasons, the judgment of the circuit court of Macon County is reversed and remanded with directions not inconsistent with this opinion.

Reversed and remanded with directions.

REARDON and SLATER, JJ., concur.