JENNIFER SIMMONS, Adm'r of the Estate of Toussant Devon Simmons, a Minor, Deceased, *et al.*, Plaintiffs-Appellees, v. UNIVERSITY OF CHICAGO HOSPITALS AND CLINICS, d/b/a University of Chicago Medical Center, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—91—2759

Opinion filed May 20, 1993.

Cassiday, Schade & Gloor, of Chicago (William J. Furey, Timothy J. Ashe, and Lynn D. Dowd, of counsel), for appellants.

Edward R. Vrdolyak, Ltd. (Timothy Quinn and Gino P. Naughton, of counsel) and Barry Sullivan of Jenner & Block, both of Chicago, for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

Jennifer Simmons, administrator of the estate of Toussant Devon Simmons, deceased, on behalf of herself and Terrence Simmons, as parents and next of kin of the decedent, sought recovery under the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, par. 1 *et seq.*) against the University of Chicago Hospitals and Clinics (UCHC) and Luis Cibils, M.D. Plaintiff alleged that defendants' medical negligence caused the death of the decedent on the day of his birth, April 5, 1983.

The case proceeded to trial before a jury, and on March 20, 1991, a verdict of $1.6 million was returned against defendants. The jury fixed the pecuniary loss of Mrs. Simmons at $900,000, and that of Mr. Simmons at $700,000. Defendants' timely post-trial motion was denied on July 18, 1991, and this appeal followed.

Defendants argue they are entitled to a new trial, assigning as error the following: (1) the giving of Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992) (IPI Civil 3d No. 5.01), which allowed the jury to draw an adverse inference by reason of defendants' failure to call Dr. Judith Hibbard as a witness; (2) the allowance of plaintiff's

motion *in limine* barring defendants from introducing evidence that Mr. and Mrs. Simmons had two children subsequent to the death of the decedent; (3) the allowance of expert testimony by Dr. Mitra Kalelkar, a forensic pathologist, on an issue allegedly beyond her field of expertise; (4) that the verdict of $1.6 million for loss of society with an infant that died at birth was excessive and the product of passion and prejudice; and (5) that the verdict was against the manifest weight of the evidence.

Viewing the evidence in this case in the light most favorable to plaintiff (*Kemper v. McDougal-Hartmann Co.* (1984), 127 Ill. App. 3d 512, 515, 468 N.E.2d 998), the following are the facts pertinent to the disposition of this appeal.

Between 10 and 10:30 a.m. on April 5, 1983, Mrs. Simmons was admitted to defendant hospital in active labor. She was examined and a fetal monitor was attached. At about 11:40 a.m., a female resident artificially ruptured Mrs. Simmons' membrane in order to attach a scalp electrode to the unborn child. When the membrane was ruptured, Mrs. Simmons began to discharge a thick muconium indicative of fetal distress caused by insufficient oxygen. At 12:20 p.m., a significant deceleration in the fetal heart rate was noted and a resident notified defendant, Dr. Cibils. Concluding that the deceleration was caused by an umbilical cord compression, Dr. Cibils ordered that Mrs. Simmons be taken to an operating room for an emergency C-section delivery. In the operating room, the fetal monitor was reconnected, and at 12:28 p.m., the child's heart rate recovered. Dr. Cibils examined both Mrs. Simmons and the unborn child, and at 12:30 p.m., he cancelled the emergency C-section procedure.

At 3:37 p.m., the fetal heart rate again significantly decelerated and Mrs. Simmons was returned to the operating room. At 3:57 p.m., Dr. Cibils performed an emergency C-section delivery of a baby boy. Although the child had a heartbeat at the time of delivery, he was in distress. Subsequent resuscitation attempts in the operating room and intensive care were unavailing, and shortly after his birth, the decedent died of perinatal asphyxia.

Plaintiff's expert witness, Dr. Masterson, opined that Dr. Cibils' cancellation of the C-section delivery at 12:28 p.m. constituted a deviation from the requisite standard of care and that this deviation caused the decedent's death. Defendants introduced evidence that Dr. Cibils complied with the requisite standard of care in his medical treatment of Mrs. Simmons and the decedent.

We will address each assignment of error, but not necessarily in the order in which defendants presented them.

The reversal of a jury verdict and grant of a new trial is warranted when a party has been prejudiced by the erroneous admission or exclusion of evidence. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 727, 457 N.E.2d 85.) This broad proposition impacts upon two allegations of error in the case at bar; namely, the admission of Dr. Mitra Kalelkar's opinion testimony, and the exclusion of defendants' evidence that the Simmonses had two children subsequent to decedent's death. We will address each of these contentions separately.

The burden of establishing an expert witness' qualifications to render an opinion on a particular subject lies with the party offering that witness' testimony. The determination of the sufficiency of the witness' qualifications is a matter within the sound discretion of the trial judge, whose decision will be reversed only for abuse of that discretion. *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 36, 541 N.E.2d 643; *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218; *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.

Dr. Kalelkar testified that in her opinion, the decedent would have survived had a C-section been performed at 12:28 p.m., when originally planned. According to defendants, this opinion would have been more appropriately given by an obstetrician or a gynecologist rather than a forensic pathologist. Defendants argue that the trial court erred in allowing Dr. Kalelkar to render an opinion outside her field of expertise.

On direct examination, Dr. Kalelkar was asked whether the decedent would have survived had he been delivered by a C-section procedure at 12:28 p.m. Before allowing her to answer the question, the trial court recessed the trial and a *voir dire* examination of Dr. Kalelkar was conducted outside the presence of the jury. During that examination, Dr. Kalelkar testified that she had studied the fetal monitor tracings for the time in issue. Those tracings revealed that the decedent suffered a period of asphyxia from which he recovered. His heart rate returned to normal and he survived *in utero*. It was her opinion that had decedent been delivered by a C-section procedure at 12:28 p.m., he would have survived. She specifically declined, however, to render any opinion as to whether, under the clinical circumstances present at 12:28 p.m., a C-section delivery should have been performed. After the *voir dire* examination, the trial court found Dr. Kalelkar competent to respond to the question posed and to render the opinion requested. Dr. Kalelkar then resumed her testimony before the jury and gave the opinion at issue.

■ There is no question as to Dr. Kalelkar's qualifications as a pathologist or her competence to render expert testimony regarding the cause of the decedent's death. Doctor Mitra Kalelkar is licensed to practice medicine in Illinois and is board certified in forensic pathology. According to her testimony, her special area of interest within her field of concentration is "pediatric deaths." The evidence also reveals that she has written on the subject of infant asphyxia. As assistant medical examiner for Cook County, Dr. Kalelkar performed an autopsy upon the decedent and also reviewed the hospital records which included the fetal monitor tracings. She found no abnormalities in the decedent's heart or other vital organs and fixed the cause of his death as perinatal asphyxia.

Based upon this record, we find no abuse of discretion in the trial court's determination that Dr. Kalelkar was qualified to render the subject opinion. It must be borne in mind that Dr. Kalelkar gave no opinion regarding the requisite standard of care owed by Dr. Cibils under the circumstances of this case, or whether he breached any such standard. In our view, the record amply supports the ruling of the trial court on this issue.

The next evidentiary issue for review is the propriety of the grant of plaintiff's motion *in limine* precluding defendants from introducing evidence that the Simmonses gave birth to two children subsequent to the death of the decedent. A complete examination of this issue requires that it be viewed from two separate perspectives, the first being the time the ruling was originally made, and the second being the time of plaintiff's closing argument.

Defendants argue that the evidence of the Simmonses' two subsequent children was relevant to plaintiff's claim for damages due to loss of society, and was crucial to defendants' ability to rebut the presumption of loss of society on the part of Mr. and Mrs. Simmons upon the death of their child.

The Illinois Wrongful Death Act governs all damage claims arising from the death of one person as a result of the negligence of another. Section 2 of the Act provides that "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." (Ill. Rev. Stat. 1981, ch. 70, par. 2; *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) When the decedent is a minor child and the next of kin are his surviving parents, the law recognizes a presumption that the parents have suffered a substantial pecuniary injury in the form of loss of society. (*Bullard,* 102 Ill. 2d at 517.) The compensable pecuniary injury in-

cluded within the concept of lost society is the future companionship, guidance, love, advice, affection and comfort that would have been exchanged between the parents and the child but for the defendant's negligence. (*Smith v. Mercy Hospital & Medical Center* (1990), 203 Ill. App. 3d 465, 560 N.E.2d 1164, affirmed in *Seef v. Sutkus* (1991), 145 Ill. 2d 336, 583 N.E.2d 510.) Inherent in the parent-child relationship are the intangible benefits of the society that each derives from the other. *Bullard*, 102 Ill. 2d at 516-17; *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 120, 499 N.E.2d 1373.

■ Defendants' theory as to the relevance of the birth of two subsequent children to the Simmonses rests upon a seriously flawed premise. In order to accept the argument, one must first accept the notion that the loss suffered by a parent upon the death of a child is somehow ameliorated with the birth of a subsequent child, a notion we categorically reject. We are speaking about the most distinct and precious commodity known, an individual human life, respect for which goes to "the heart of our legal system and, broader still, our civilization." *Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193, 201, 447 N.E.2d 385.

Accordingly, we fail to see how the birth of two subsequent children is in any way relevant to the loss of society suffered by the Simmonses upon the decedent's death. Defendants' argument might have merit if we were addressing it in the context of a claim for loss of services (see *Smith*, 203 Ill. App. 3d at 478), but we are not. As defendants' brief acknowledges and the trial court's jury instructions bear out, the sole element of damage in this case is loss of society. If defendants' argument on this issue were accepted, surviving parents in a wrongful death claim would be required to engage in the unseemly spectacle of disparaging the societal value of their afterborn children in an effort to minimize the offset which the defendants claim by those children's very existence. See *Cockrum*, 95 Ill. 2d at 202; *Dralle v. Ruder* (1988), 124 Ill. 2d 61, 71, 529 N.E.2d 209.

Additionally, defendants have claimed prejudice because plaintiff's counsel, armed with the trial court's ruling on the motion *in limine*, misrepresented the Simmonses' family circumstances in closing argument by suggesting that defendants had deprived them of the opportunity to have a family.

■ Defendants' argument on this contention must fail for two reasons. First, defendants failed to object at the time plaintiff's closing argument was made. It was only after the verdict that they requested relief from the trial court. Defendants have thus waived any error that may have arisen from the remarks. (*Lindroth v. Walgreen*

*Co.* (1950), 407 Ill. 121, 94 N.E.2d 847; *People v. Switalski* (1946), 394 Ill. 530, 69 N.E.2d 315.) Second, even if the issue were not waived, we believe that defendants' interpretation of the remarks of plaintiff's attorney is strained. While it is true that plaintiff's attorney spoke in terms of "family," he did not convey the idea that the Simmonses could not have a family after the death of the decedent. Rather, the argument to the jury related specifically to the birth and death of this decedent. The argument was couched in terms of the Simmonses' expectations, preparations, dreams and hopes prior to the child's birth, and their familial loss upon his death. The argument was directed to the loss of "their first born child" and "their first born son." Family, to the extent mentioned, referred to a relationship to this particular child. Not once did plaintiff's attorney argue or insinuate that after the decedent's death the Simmonses could not or did not have children.

Defendants' next contention relates to the trial court's giving of a "missing witness" instruction, IPI Civil 3d No. 5.01, and the remarks of plaintiff's attorney in closing argument relating to defendants' failure to call certain doctors and a nurse to testify.

Before plaintiff rested her case in rebuttal, the court and counsel held an instruction conference wherein plaintiff tendered a missing witness instruction, IPI Civil 3d No. 5.01. Plaintiff maintained that the instruction was appropriate because defendants failed to call as witnesses Dr. Smallwood, Dr. Hibbard, Dr. Anderson, Dr. Blanks, Dr. Michelleti and Nurse Dennis, each of whom possessed relevant information concerning the care rendered to Mrs. Simmons and the decedent. Defendants objected on three grounds: first, Dr. Hibbard was the only member of the group still employed by UCHC; second, plaintiff had failed to serve a Rule 237 notice (134 Ill. 2d R. 237) requesting production of any of the individuals; and third, that defendants' failure to call additional witnesses was motivated by a desire to "streamline" the trial process by dispensing with "extraneous" witnesses. From the outset, the trial court held that since Smallwood, Anderson, Blanks, Michelleti and Dennis were no longer under the control of UCHC, it would be inappropriate to give IPI Civil 3d No. 5.01 by reason of defendants' failure to call them as witnesses or to permit argument on the issue.

The discussion in the conference then focussed on defendants' failure to call Dr. Hibbard. Defendants sought to reopen their case to call Hibbard if the court was inclined to give an IPI Civil 3d No. 5.01 instruction. At this point, plaintiff withdrew the instruction. The trial court then indicated that in the absence of an IPI Civil 3d No. 5.01

instruction, plaintiff could not argue that the jury should draw any adverse inference by reason of defendants' failure to call a witness. Plaintiff subsequently resubmitted the "missing witness" instruction and the defense again moved to reopen its case and call Dr. Hibbard to testify. The court granted defendants' motion to reopen, and plaintiff again withdrew the instruction.

After plaintiff rested, the trial judge and counsel met outside the presence of the jury at which time the trial judge, *sua sponte*, reopened the discussion of the propriety of giving an IPI Civil 3d No. 5.01 instruction. After explaining his reasons, the judge indicated that he had reconsidered the matter and was prepared to submit a missing witness instruction for defendants' failure to call Dr. Hibbard as a witness. In response to the judge's remarks, defense counsel objected, arguing that under the circumstances he ought to be given the opportunity to reopen the defense case. He stated that if the court was going to resubmit the instruction, he wanted to consider making a motion to reopen. After the trial judge reiterated the basis for his position, he ruled that an IPI Civil 3d No. 5.01 instruction would be given to the jury. After the ruling, defendants made no motion to reopen their case to call additional witnesses.

When the trial reconvened, plaintiff's attorney made his closing argument. He argued that the jury could infer that the reason Hibbard, Smallwood, Anderson, Blanks, Michelleti, and Dennis did not testify in the case was because they "could not say anything to back [defendants] up." Further on in his argument, plaintiff's counsel informed the jury that the court would instruct them as to the inference that they could draw by reason of defendant UCHC's failure to call its employee, Dr. Hibbard, to testify. He urged the jury to look at the instruction in light of what they had heard about Dr. Hibbard. Defendants made no objection to any of plaintiff's counsel's remarks to the jury either during his argument or at any time thereafter prior to verdict.

After closing arguments, the court instructed the jury both orally and in writing. One of the instructions was IPI Civil 3d No. 5.01, which was as follows:

> "If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:
>
> 1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstance would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown."

The inappropriate giving of a "missing witness instruction" (*Taake v. W H G K, Inc.* (1992), 228 Ill. App. 3d 692, 592 N.E.2d 1159), or improper comment by counsel in argument concerning an opponent's failure to produce certain witnesses (*Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 445 N.E.2d 63; *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 367 N.E.2d 472), warrants the grant of a new trial when either acts to deprive the appellant of a fair trial.

The criteria for the giving of a "missing witness" instruction, and the ability of counsel to comment adversely upon an opponent's failure to call a witness, were passed upon by our supreme court in *Schaffner* (129 Ill. 2d at 22):

"As a general matter, the adverse inference is available when the missing witness was under the control of the party to be charged and could have been produced by reasonable diligence, the witness was not equally available to the party requesting that the inference be made, a reasonably prudent person would have produced the witness if the party believed that the testimony would be favorable, and no reasonable excuse for the failure to produce the witness is shown. (*Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 776; IPI Civil 2d, No. 5.01; see *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 318-19 (same criteria govern use of pattern instruction and allowance of adverse comment in argument).) The decision whether to use the instruction or permit the argument is reserved to the sound discretion of the court (see *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1046-47 (instruction)) ***."

In the instant case, we agree with the trial court's decision that the missing witness instruction was warranted because of defendant UCHC's failure to call Dr. Judith Hibbard to testify. Dr. Hibbard was a resident at UCHC on the date of Mrs. Simmons' admission. It was Dr. Hibbard who recorded on the hospital chart the events preceding Dr. Cibils' decision to perform an emergency C-section at 12:20 p.m., and the events leading to the cancellation of that procedure about 12:30 p.m. At the time of trial, Dr. Hibbard was still in the employ of defendant UCHC. By virtue of her status

as an employee of UCHC, it was reasonable to conclude that she was within defendants' control (*Schaffner*, 129 Ill. 2d at 23), and not equally available to plaintiff, notwithstanding plaintiff's ability to compel Dr. Hibbard's appearance at trial under Supreme Court Rule 237. (*Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742, 756, 515 N.E.2d 298, *aff'd* (1989), 129 Ill. 2d 1.) It was also reasonable for the trial court to assume that defendant UCHC would have presented Dr. Hibbard if it believed her testimony would have been favorable. (*Schaffner*, 129 Ill. 2d at 24.) We arrive at this conclusion for two reasons. First, aside from the testimony of defendant Dr. Cibils, the only evidence the jury heard relating to the propriety of his decision to cancel the C-section was from the parties' "retained experts"—hardly nonpartisans. (See *Sears v. Rutishauser* (1983), 117 Ill. App. 3d 61, 68, 453 N.E.2d 1 (Webber, P.J., dissenting), *rev'd* (1984), 102 Ill. 2d 402, 466 N.E.2d 210.) Second, defendants had successfully argued against plaintiff's attempt to bar them from calling Dr. Hibbard as a witness under the "*Petrillo* doctrine." (See *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.) Defendants contend that they offered a reasonable excuse for not calling Dr. Hibbard. We disagree. The failure of a plaintiff to serve a Rule 237 notice upon a defendant commanding the production of a witness who, by virtue of employment, is potentially biased against the plaintiff is not a reasonable excuse for the defendant's failure to call the witness. Additionally, the only testimony on the central issue in this case, the propriety of a medical decision, came from a defendant doctor and two retained witnesses whose opinions were premised on a review of records. Under these circumstances, the failure to call a doctor who was not a defendant and who directly witnessed the events leading up to the decision in question can hardly be written off as a desire to "streamline" the proceedings. Under the circumstances of this case, it was not an abuse of discretion for the trial court to give the missing witness instruction.

The next area of inquiry surrounds a portion of plaintiff's closing argument suggesting defendants' failure to call Doctors Smallwood, Anderson, Blanks and Michelleti and Nurse Dennis as witnesses, and the adverse inference that could be drawn therefrom. As indicated earlier, the missing witness instruction was given solely by reason of UCHC's failure to call Dr. Hibbard. From the very outset, the trial judge indicated that an IPI Civil 3d No. 5.01 instruction would not be given by reason of defendants' failure to call the remaining individuals as witnesses. The court's reason,

with which we concur, was that since these individuals were no longer in UCHC's employ, the control element necessary for the giving of the instruction was absent. When speaking with reference to these individuals, the trial judge stated:

> "If they are not within the control of the defense, then obviously no No. 501 [*sic*] or argument along the lines of 501 [*sic*] would be appropriate, so that's my ruling with regard to them. There's no reason to think that they are within the control of the defense. Now lets talk about Hibbard."

Without question, plaintiff's attorney violated the court's ruling when he implied that the jury could draw an inference adverse to defendants by the failure of these individuals to testify. The question before this court, however, is whether counsel's remarks mandate a reversal and remandment for a new trial. Plaintiff argues that because defendants raised no objection to these comments, any error has been waived.

The general rule is that the failure to object to prejudicial comments in an opponent's closing argument constitutes a waiver of the objection, and any alleged error by reason of the comments will not be considered on appeal. (*Lindroth*, 407 Ill. at 136; *Eaglin v. Cook County Hospital* (1992), 227 Ill. App. 3d 724, 592 N.E.2d 205.) This rule traces its lineage to *Earll v. People* (1881), 99 Ill. 123, 136, wherein our supreme court stated "[t]he law will not permit counsel to silently sit by and witness such an irregularity, without any effort to prevent it in the court where it occurs, and then allow him to take advantage of it in a court of review." The reason for the rule is apparent. In the absence of objection, the trial court is deprived of the opportunity to remedy the situation with a curative instruction. See *Marotta v. General Motors Corp.* (1985), 108 Ill. 2d 168, 179, 483 N.E.2d 503.

The rule as stated, however, is not without exception. Prejudicial remarks made in argument may be considered on review despite counsel's failure to object if they are so prejudicial that they deprive the opposing party of a fair trial. *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, 162 N.E.2d 373; *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.

We believe that before we may appropriately consider prejudicial remarks in closing argument absent a timely objection, we must first consider whether the prejudicial effect of the remarks could have been ameliorated had a timely objection been sustained and a curative instruction given to the jury.

The impropriety of commenting upon an opponent's failure to call a witness when that witness was not under the opponent's control is clear. (*Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 382, 553 N.E.2d 291.) By engaging in such commentary, counsel is attempting to undermine the credibility of the opponent's case by suggesting that the jury may infer that the witness' testimony would have been adverse to the opponent, and perhaps more damning, that the opponent is concealing relevant evidence from the jury.

■ In this case, we are faced with an unusual circumstance. As indicated earlier, the missing witness instruction was warranted because of UCHC's failure to call Dr. Hibbard to testify, and plaintiff's attorney had every right to comment upon Hibbard's absence and to suggest the inference permissible from that absence. In this circumstance, the negative impact of a missing witness argument would have been present in any case. The impropriety arose when plaintiff's counsel referred to the absence of Doctors Smallwood, Anderson, Blanks and Michelleti and Nurse Dennis.

Under normal circumstances, we can appreciate why an attorney might wish to forego an objection in the presence of the jury, as it would only reinforce the implication that there was something being hidden. In this case, however, a timely objection, properly sustained, followed by an instruction to the jury, could have remedied the circumstance. In sustaining the objection, the court would have been well within its authority to inform the jury that the reason they could draw no adverse inference from the absence of the four doctors and the nurse was because they were not under the control of defendant and were equally accessible to plaintiff. In our minds, the trial court could have gone so far as to further instruct the jury that, as they were not to draw any inference adverse to defendants, they were similarly precluded from drawing such an inference against plaintiff by reason of her failure to call the individuals as witnesses. Had that been done, any prejudice that might have flowed from the remarks would have been negated as plaintiff's attorney's improper comments would have been as applicable to his own client as they were to the defendants. Even if defendants were not inclined to object during plaintiff's closing argument in the presence of the jury, they made no attempt to seek a sidebar conference with the trial judge after plaintiff's argument to request remedial relief. While we do not wish to be understood as sanctioning the conduct of plaintiff's counsel, we do not think, under the circumstances of this case, that defendants can ignore such com-

ments, seek no relief from the trial judge, and claim error only after the jury have returned a verdict against them. As such, by failing to object to plaintiff's comments during the closing argument or the first available opportunity thereafter, defendants have waived the issue for appeal. *Eaglin*, 227 Ill. App. 3d at 732.

Courts of review are empowered to reverse a jury verdict and order a new trial if the verdict is against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) In determining whether a jury verdict is against the manifest weight of the evidence, the court weighs the evidence viewed in its light most favorable to the appellee and orders a new trial if the verdict is palpably erroneous, wholly unwarranted, and an opposite result is clearly evident. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530.) It is the function of the jury to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. (*Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212.) In determining the necessity of a new trial, a reviewing court does not sit as a second jury and reevaluate the credibility of the witnesses. *Dabros v. Wang* (1993), 243 Ill. App. 3d 259; *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 362 N.E.2d 446.

█ In this case, the jury heard the testimony of the plaintiff's expert, Dr. Masterson, in support of the theory that the applicable medical standard of care had been breached. The jury heard the testimony of defendant Dr. Cibils and defendants' expert, Dr. Quilligan, to the effect that Dr. Cibils' decision to cancel the C-section procedure at 12:28 p.m. was within the standard of care owed under the circumstances. The jury chose to believe Dr. Masterson on the question. From an examination of the record as a whole, we are unable to hold that the jury's finding on the issue was palpably erroneous and wholly unwarranted. The fact that Dr. Masterson's opinions may have been weakened on cross-examination and were contradicted by both Dr. Cibils and Dr. Quilligan does not compel a contrary conclusion. The evidence received by the jury on the standard of care question consisted of conflicting expert testimony. The weight to be afforded such testimony and the credibility to be assigned to the witnesses was for the trier of fact. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 260, 381 N.E.2d 279; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423-24, 328 N.E.2d 301.

█ Finally, we reject defendants' contention that a damage award of $1.6 million for parental loss of society resulting from the

death of an infant minutes after birth is *per se* excessive. As we have indicated, parents are entitled to a rebuttable presumption of substantial pecuniary loss upon the death of a child. (*Bullard*, 102 Ill. 2d at 517.) The loss is compensable in a wrongful death action even in the case of stillbirths. (*Seef v. Sutkus* (1991), 145 Ill. 2d 336, 583 N.E.2d 510.) Our supreme court has repeatedly found that the amount of damages to be assessed under the circumstances of any given case is a matter within the discretion of the jury. (*Baird v. Chicago Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413; *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63.) The jury's assessment of damages will not be set aside on review unless it was the result of passion or prejudice, falls outside the limits of fair and reasonable compensation, or shocks the judicial conscience. *Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036, 510 N.E.2d 1208.

In arguing the excessiveness of the verdict, defendants draw our attention to the fact that $1.6 million in damages for parental loss of society with a deceased newborn child is "an all-time high verdict in Cook County," citing as authority the Cook County Jury Verdict Reporter. Such a comparison argument is inappropriate before a trial court as well as this court. Damage awards cannot be tested for excessiveness by comparison with verdicts in other cases. *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 481 N.E.2d 957.

After scrutinizing the record, we are unable to say that the verdict in this case was the result of passion or prejudice, nor are we able to find that an award of $1.6 million in damages is outside the limits of fair and reasonable compensation.

Accordingly, for the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.